# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF LOUISIANA

IN RE:  CASE NO. 08-11756

**EASTERLY CONSTRUCTION COMPANY, INC.**

DEBTOR  CHAPTER 11

## MEMORANDUM OPINION

Vantage Construction, L.L.C. ("Vantage") moved to estimate its claim in order to vote on chapter 11 plan filed by debtor Easterly Construction Company, Inc. ("Easterly"). The debtor opposed temporary allowance.

Vantage filed its proof of claim on April 3, 2009 and amended it on August 25, 2009. Easterly later objected to the claim.

Both parties presumably offered their best evidence and made their best arguments at the hearing even though neither estimation nor temporary allowance result in the final adjudication of a claim.[1] This ruling rests on their evidence.

### The Parties' Agreement was a Sale and Not a Lease, and Easterly Owes Vantage the Balance of the Equipment Purchase Price

Vantage claims that Easterly owes it $2,696,169.29[2] based on an equipment lease. The debtor contends that Vantage has no claim for several reasons, and that even if Vantage did have

---

[1] The procedures are intended to avoid delaying confirmation (in the case of temporary allowance for voting purposes) or unduly delaying the administration of the case (when a party seeks to estimate a claim). *See* Fed. R. Bankr. P. 3018(a) (temporary allowance) and 11 U.S.C. §502(c) (estimation). The Bankruptcy Code and Federal Rules of Bankruptcy Procedure do not prescribe a method for estimating or temporarily allowing claims. However, "the bankruptcy court is governed by traditional rules governing the estimation of the ultimate value of the claim, and the bankruptcy court should use whatever method is best suited to the circumstances to fix the claim." *In re TransAmerican Natural Gas Corp.*, 79 B.R. 663, 666, citing *In re Brints Cotton Marketing, Inc.*, 737 F.2d 1338, 1341 (5th Cir.1984). The burden of proof in a Rule 3018(a) estimation process is the same as that for objections to claims. *See In re Frascella Enterprises, Inc.*, 360 B.R. 435, 458-9 (Bankr. E.D. Pa. 2007); *In re LJSC, Ltd.*, 2006 WL 2038649 at *4 (Bankr. D. Kan. 2006).

a claim, damages Vantage owes Easterly for wrongfully seizing the debtor's equipment prepetition completely offset the claim.

Allen Thomason, a Vantage member, once owned an interest in Easterly with long-time acquaintance John Easterly, its president and sole shareholder. Vantage's claim is based on an oral agreement (neither party alleges that the agreement was written) relating to Thomason's disposition of his ownership interest in the debtor. Allen Thomason testified that in connection with that transaction, he orally agreed on behalf of Vantage to let the debtor *use* Vantage's equipment in exchange for twenty-five percent of amounts the debtor was paid for work it performed using the equipment. John Easterly disputed Thomason's version of the deal: he testified that Vantage agreed to *sell* Easterly the equipment for $2 million, and that Vantage would keep twenty-five percent of the debtor's gross income for work it performed on *Vantage* projects.

Though the witnesses' testimony conflicts, the documentary evidence, particularly the "Vantage/Easterly Equipment Ledger" (Exhibit E-1), supports a finding and conclusion that Vantage sold the equipment to the debtor. John Easterly testified that Jeff Purpera, Jr. of Vantage prepared Exhibit E-1, and presumably obtained the information contained in it, so ambiguities in the document must be construed against Vantage. *See Joyner v. Liprie*, 896 So.2d 363, 367 (La. App. 2d Cir. 2005) ("an ambiguity in a document must be construed against the drafter.") That document refers to an annual interest rate, and additional charges representing accrued interest for specific periods at monthly intervals. Those entries are inconsistent with a lease relationship. Exhibit E-1 also shows several purchases of heavy equipment during the existence of the parties' relationship, as well as the disposition of other equipment. The balance

---

[2] Vantage's original claim was for $385,111.

shown as due to Vantage on Exhibit E-1 increased or declined as a result of those transactions. The entries in combination betoken a sale rather than a lease.

Other evidence shores up this conclusion. Specifically, Exhibits V-5 (the debtor's work invoices) and V-6 (Vantage's amended proof of claim with attached summary of invoices and payment) also tend to corroborate Mr. Easterly's understanding of the agreement that Vantage was retaining 25% of the debtor's income from *Vantage-directed* work it performed, not all of its work.

Testimony and other evidence Vantage offered to support a finding that the "Vantage/Easterly Equipment Ledger" (Exhibit E-1) reflected something other than a sale—specifically, Vantage's cost of acquiring equipment it let Easterly use—was not persuasive. Accordingly, it is given no weight.

The evidence established that the debtor owed Vantage $2,324,257.17 as of December 19, 2007. Additional invoices introduced into the record as Exhibit V-5 demonstrate that Easterly paid Vantage $235,662.33 after December 19, 2007. The evidence also established that Vantage received $1.8 million from the sale of the equipment at auction. In combination this supports a finding and conclusion that Easterly still owes Vantage $288,595 for the equipment.

### Easterly has no Wrongful Seizure Claim Against Vantage

The debtor's counterclaim for allegedly wrongful seizure is meritless.

The testimony of Allen Thomason and Marvin Henderson of JAH Enterprises ("JAH"), the auctioneer who sold the equipment, established that the debtor consented to JAH's collection and auction sale of the equipment in 2008. Henderson testified that John Easterly negotiated with JAH concerning the value of the debtor's equipment to be sold at auction. Mr. Henderson

specifically testified that because Mr. Easterly would not accept amounts Henderson offered to pay for some of the equipment in lieu of auctioning it, Easterly arranged to have JAH sell the equipment in the auction.  The evidence also demonstrated that JAH and the debtor, through John Easterly, agreed that the equipment could remain on the debtor's job sites to enable the debtor to finish work in progress, after which JAH would collect the equipment to prepare it for auction.[3]

Mr. Easterly testified that he opposed the sale of equipment and told Mr. Thomason that the debtor wanted to keep the equipment in order to stay in business.  He also claimed that Thomason, Purpera and possibly other Vantage principals insisted on selling Easterly's equipment and told him that Easterly could do nothing to stop it.  However, the debtor offered no independent evidence corroborating Mr. Easterly's contention that the debtor wanted the auction stopped.  More importantly, Mr. Easterly took no steps to stop the auction.  Instead the evidence established that Mr. Easterly actually helped prepare for the auction sale and even attended it.  He admitted even helping to put a bulldozer into gear at the auction so that it could be shown to potential purchasers.

The debtor also took no legal steps to stop the equipment sale.  Mr. Easterly testified that he had considered hiring his brother, who is a lawyer, to represent the debtor, but his brother was unavailable to undertake the representation.  Easterly also testified that he (and presumably the debtor) lacked the funds to hire an attorney or to post a bond to enjoin the sale.  However, he also testified he did not know how much money he had at that time, which belies his testimony that he lacked the funds to hire counsel or post a bond—if indeed a bond were required.  The debtor

---

[3] Marvin Henderson testified that JAH prepared equipment before auction by repairing and cleaning it.

- 5 -

only sued Vantage after filing chapter 11.[4]  Accordingly, the debtor's consent undermines its claim that Vantage wrongfully seized and sold its equipment.  *See Cook v. Spillers*, 574 So.2d 464, 467 (La. App. 2d Cir. 1991), citing *Samaniego v. Horseless Carriage, Inc.*, 350 So.2d 193, 195 (La. App. 2d Cir. 1977) (seizing creditor can avoid liability for illegal seizure by showing the consent of the owner, which may be inferred from actions that "when considered with . . . words and all other circumstances, can lead to no other reasonable conclusion.")

Absolutely no evidence supports the conclusion that Vantage exercised duress to obtain the debtor's cooperation with the sale.  Mr. Easterly's actions, together with his failure to try to stop the sale, are inconsistent with the debtor's claim that Vantage acted unlawfully.  On this record as a matter of law the debtor has no claim that Vantage and Henderson wrongfully seized and sold its property.  Therefore, the debtor's claim against Vantage for wrongful seizure and sale is worthless and cannot offset any amount the debtor owes it.  Accordingly, Vantage's claim is temporarily allowed as a nonpriority unsecured claim for $288,595 for the purposes of voting and distribution.

Baton Rouge, Louisiana, October 22, 2009.

**s/Douglas D. Dodd**
DOUGLAS D. DODD
UNITED STATES BANKRUPTCY JUDGE

---

[4] Adversary proceeding 09-1002.